WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terri Hayford, | No. CV-20-01808-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Santander Consumer USA Incorporated, | |
| Defendant. | |

At issue is Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 9, Mot.). The Court has reviewed the Motion, Plaintiff's Response, (Doc. 19, Resp.), and Defendant's Reply, (Doc. 20, Reply), and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the following reasons, the Court grants Defendant's Motion.

**I.    FACTUAL BACKGROUND**

Plaintiff Terri Hayford[1] filed a Complaint on behalf of herself and a similarly situated class of employees against Defendant Santander Consumer USA, Inc. (Doc. 1, Compl.) Individually and on behalf of a class of Santander's employees, Hayford alleges that Santander violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime wages. (Compl. ¶ 1.)

---

[1] Subsequent to the filing of Hayford's Complaint, Erica Palfrey consented to join the action as a Co-Plaintiff. (Doc. 8, Notice Filing Consent Erica Palfrey.) For convenience, the Court refers mostly to Plaintiff Hayford in this Order. Except as noted, the same facts and analyses apply to Plaintiff Palfrey.

Hayford worked for a Santander call center in Mesa, Arizona, from approximately April 10, 2017, to October 31, 2019. (Compl. ¶ 16; Mot. Ex. A ¶ 3.) New hires at Santander are required to review and acknowledge receipt and understanding of Santander company policies, including Santander's Arbitration Policy, (*see* Mot. Ex. B), as part of a new hire orientation. (Mot. Ex. A ¶ 5.) To review and acknowledge the policies, new employees are required to log in to Santander's training portal using their individual unique usernames and confidential, self-created passwords. (Mot. Ex. A ¶ 6.) Once logged in, new employees must open each policy individually to review it. (Mot. Ex. A ¶ 7.) When they close a policy, a separate button appears that employees must click to acknowledge they have reviewed the policy. (Mot. Ex. A ¶ 7.) Employees must complete this process of review and acknowledgment during their new hire orientation. (Mot. Ex. A ¶ 7.) Santander's human resources department tracks the new employees' progress and follows up with employees who do not acknowledge reviewing each policy, including the Arbitration Policy, to ensure completion of the acknowledgment process. (Mot. Ex. A ¶ 7.)

During Hayford's employment, Santander used software to electronically track and manage employees' completion of their training and acknowledgment of Santander's policies and procedures. (Mot. Ex. A ¶ 9.) The software reports that Hayford acknowledged review of Santander's Arbitration Policy on April 18, 2017.[2] (Mot. Ex. A ¶ 10; Ex. C.)

Hayford admits that Santander required her to electronically review several documents as part of the hiring process and confirm she had reviewed them. (Reply Ex. A ¶ 3.) However, Hayford avers that the documents she reviewed during hiring or at any other time during her employment did not include an arbitration agreement; that Santander never provided her with a written or electronic copy of an arbitration agreement; and that she has never seen the document titled "Arbitration Policy" that Santander contends applies to her FLSA claim for unpaid wages. (Resp. Ex. A ¶ 4.)

---

[2] The same software reports that Plaintiff Palfrey acknowledged review of Santander's Arbitration Policy on January 9, 2018. (Mot. Ex. B ¶ 10; Ex. D.)

The Arbitration Policy reads in part as follows:

> The Company and the Associate agree to submit to binding arbitration any dispute, claim, or controversy that may arise between Associate and the Company arising out of or in connection with the Company's business, the Associate's employment with the Company, or the termination of Associate's employment with the Company.
>
> This Arbitration Policy is intended to broadly cover the entire relationship between Associate and Company and includes, without limitation . . . any dispute claim or controversy relating to . . . any claim arising under any . . . federal statute . . ., including but not limited to the Fair Labor Standards Act, . . . .
>
> Associate acknowledges and confirms and understands that this Arbitration Policy is a condition of continued employment with the Company and that by continuing employment after being presented with this Arbitration Policy, the Associate is subject to such Policy.
>
> The Company and Associate further acknowledge that this Arbitration Policy is supported by consideration, including the mutual requirement to arbitrate disputes and the continuing employment of the Associate.

(Mot. Ex. B.)

Santander argues that Hayford is compelled to arbitrate her employment-related claims against Santander on an individual basis because she entered into a valid agreement with Santander to arbitrate all employment-related claims (Mot. at 4–7); the claims in her Complaint fall within the scope of that agreement (Mot. at 8–10); and the question of the individualized arbitrability of Hayford's claim is reserved for the Court where the Arbitration Policy is silent on the issue (Mot. at 9–10). Santander further argues that Hayford waived any objection to enforcement of the Arbitration Policy by twice initiating arbitration against Santander for employment-related claims. (Mot. at 10–11.)

In her Response, Hayford counters that she should not be compelled to arbitrate her claims because she never agreed through the Arbitration Policy or otherwise to arbitrate any legal disputes with Santander. (Resp. at 5–6.) She argues in the alternative that the Arbitration Policy cannot be enforced because it is both procedurally and substantively unconscionable. (Resp. at 6–11.) Finally, she asserts that she did not waive her right to pursue claims in court by filing her previous demands for arbitration. (Resp. at 11.)

In its Reply, Santander contends that Hayford's averments are insufficient to call into question the existence of a valid arbitration agreement between them. (Reply at 2–5.) Santander denies the Arbitration Policy is either procedurally or substantively unconscionable, (Reply at 5–9), and reasserts that Hayford's twice initiating arbitral proceedings against Santander constitutes a waiver of her ability to challenge the enforceability of the arbitration agreement, (Reply at 10).

## II. LEGAL STANDARD

The Arbitration Policy at issue is governed by the Federal Arbitration Act ("FAA"). The Supreme Court has recognized the FAA as a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

To resolve a motion to compel arbitration under the FAA, 9 U.S.C. § 1 *et seq.*, a district court must determine (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the arbitration agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If both elements are met, the FAA requires the court to enforce the arbitration agreement. *Id.* "A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56, Fed. R. Civ. P." *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011). That is, "[i]f there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only where there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d, 1136, 1141 (9th Cir. 1991).

District courts apply state law principles governing the formation of contracts to determine whether a valid arbitration agreement exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Where, as here, the Court has jurisdiction over a civil action under 28 U.S.C. § 1331 (federal question), federal common law choice-of-law rules apply to determine under which state's law the formation of the alleged arbitration agreement is to be analyzed. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). Federal common law follows the approach outlined in the Restatement (Second) of Conflict of Laws, *id.*, which provides that, absent an effective choice by the parties, "the rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties," Restatement (Second) of Conflict of Laws § 188(1) (Am. L. Inst. 1971). The Court agrees with Santander's analysis that Arizona law governs the formation of the alleged arbitration agreement, (Mot. at 4–5), and the Court views the absence of a challenge to that analysis by Hayford as consent to that conclusion.

## III. ANALYSIS

### A. Existence of Arbitration Agreement

The formation of an enforceable contract under Arizona law requires "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991). The FAA requires that an agreement to arbitrate be in writing, but "a party's signature is not necessary to bind him to arbitration if he was aware of the provision and it was in writing." *Pinto v. USAA Ins. Agency Inc. of Tex.*, 275 F. Supp. 3d 1165, 1168–69 (D. Ariz. 2017). A mutual promise between employer and employed to arbitrate or continued employment alone may be sufficient consideration to support an arbitration agreement. *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (mutual promise to arbitrate as consideration); *Coup*, 823 F. Supp. 2d at 943–44 (citing *Mattison v. Johnston*, 730 P.2d 286, 288–90 (Ariz. Ct. App. 1986)) (continued employment of at-will employee as consideration).

Santander provides specific evidence of the existence of an arbitration agreement between Santander and Hayford in the form of the Arbitration Policy. The evidence is well-founded by the declaration of a human resources employee with personal knowledge of Santander's new-hire practices and training software. The evidence shows that the written Arbitration Policy was electronically provided to Hayford at the beginning of her employment, that she accepted it by acknowledging it electronically and continuing employment at Santander for over two years,[3] and that Santander provided sufficient consideration by both also binding itself to arbitration and prolonging Hayford's employment. The Court finds this evidence persuasive, particularly given that Hayford could only access the Arbitration Policy and acknowledge it on the training system by using a unique user ID and a confidential password that she generated. Moreover, the terms of the arbitration agreement are sufficiently clear and specific. (Mot. Ex. B.)

Hayford's general denials of having agreed to or received the Arbitration Policy or any arbitration agreement between her and Santander are insufficient to place the material fact of the existence of or the parties' entry into the Arbitration Policy in dispute. Hayford does not challenge the personal knowledge of the foundation witness for Santander's Exhibits to its Motion. She does not question the accuracy of the reports evidencing her receipt and acknowledgment of the Arbitration Policy. She does not challenge the security of the training system or her user-created password. In short, her affidavit fails to designate specific facts showing that there is a genuine issue.

"If a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless." *Blau v. AT&T Mobility*, No. C 11-00541 CRB, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012). Apart from a general denial, Hayford has failed to present any specific facts to show she did not receive or acknowledge the Arbitration Policy as against the evidence Santander presented, and Hayford thus fails to raise a genuine issue of material fact on the issue of the existence of or parties' entry into the Arbitration Policy

---

[3] The dates and length of Palfrey's employment differ, but the Santander-averred facts relative to Palfrey are otherwise similar to those relative to Hayford.

- 6 -

that would preclude the Court's determination of Hayford's being subject to the agreement as a matter of law. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

### B.     Enforcement of Arbitration Agreement

Hayford next argues that the Arbitration Policy cannot be enforced because it is both procedurally and substantively unconscionable. (Resp. at 6–11.) Unconscionability is a generally recognized contract defense that may invalidate arbitration agreements under the FAA. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687–88 (1996). Arizona recognizes both types of unconscionability alleged by Hayford: procedural, which arises in the bargaining process at the time of contract formation, and substantive, where the contract terms are *per se* unconscionable. *Nickerson v. Green Valley Recreation, Inc.*, 265 P.3d 1108, 1117 (Ariz. Ct. App. 2011). "The determination of whether a contract is unconscionable is to be made by the trial court as a matter of law." *Id.*

Hayford argues that the Arbitration Policy is procedurally unconscionable because she did not have the opportunity to negotiate its terms; it was presented to her on a "take it or leave it" basis; her employment was conditioned on it; and she was never provided with a copy of the rules of the American Arbitration Association ("AAA") or informed that she should review them. (Mot. at 9.)

Hayford asks the Court to find the arbitration agreement was a contract of adhesion by applying California law, which is inappropriate where Arizona law applies. Hayford does not examine the applicable factors under Arizona law, and on its own examination the Court does not find they point to procedural unconscionability. Importantly, the evidence does not support a conclusion that Hayford was unfairly surprised by the Arbitration Policy. *See Maxwell v. Fidelity Fin. Servs.*, 907 P.2d 51, 57–58 (Ariz. 1995). When Hayford began her employment, Santander required her to review and acknowledge the Arbitration Policy, which is a separate document labelled "Arbitration Policy" in large, bold print. (Mot. Ex. B.) This does not rise to the level of procedural unconscionablility under Arizona law. *See Duenas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 768–69 (Ariz. 2014). Moreover, the fact that Hayford states Santander did not give her a copy of the AAA

rules does not make a procedurally proper arbitration agreement a procedurally unconscionable one. *See Russ v. United Servs. Auto. Ass'n*, No. CV-16-02787-PGR, 2017 WL 1953458, at *4 (D. Ariz. May 11, 2017) (collecting cases).

Likewise, the grounds upon which Hayford asks the Court to find substantive unconscionability of the Arbitration Policy do not apply with sufficient force to invalidate it. (*See* Resp. at 9–11.) First, Hayford provides no evidence that participating in an arbitration in Dallas, Texas—as the Arbitration Policy provides—would be oppressive by creating an undue financial and logistical burden on her.[4] As Santander points out in its Reply, in Arizona, forum selection clauses are enforced unless the party claiming unfairness or oppression meets the applicable burden of proof, and "[m]ere physical inconvenience and increased costs are not enough to defeat a forum selection clause." *Benson v. Casa De Capri Enters. LLC*, No. CV-18-00006-PHX-DWL, 2019 WL 3430159, at *8–9 (D. Ariz. July 30, 2019) (quoting *Bennett v. Appaloosa Horse Club*, 35 P.3d 426, 431 (Ariz. Ct. App. 2001)). And, as Santander also points out, the AAA rules provide for alternative means to attend conferences and make evidentiary presentations, which reduce the costs of out-of-state arbitration. (Reply at 8.)

Second, the Court disagrees that the terms of the Arbitration Policy conflict with the FLSA by allowing Santander to recover costs not otherwise recoverable. The Arbitration Policy states, "[t]he party that substantially prevails in the arbitration shall be entitled to recover from the other party all arbitration fees and reasonable attorney's fees incurred by the party, *as provided for by law*"—not in instances when the law does not so provide. (Mot. Ex. B (emphasis added).) For all these reasons, the Court declines to invalidate the delegation provision on unconscionability grounds.

### C.     Waiver by Hayford

The Court finds that an enforceable arbitration agreement exists between Santander and Hayford, as well as Santander and Palfrey, and that Plaintiffs' FLSA claims fall within

---

[4] If anything, the record shows Hayford is able and willing to participate in arbitration proceedings outside Arizona, as she herself initiated arbitration against Santander in Chicago, Illinois.

its scope—a proposition Plaintiffs do not dispute. As a result, the Court need not address Santander's argument that Hayford waived any objection to enforcement of the Arbitration Policy for twice seeking arbitration of her claim prior to initiating the instant action.

### D.  Stay

Under 9 U.S.C. § 3, the Court must stay rather than terminate proceedings pending arbitration upon a party's stay request if the Court determines that the issues involved are subject to arbitration under a written arbitration agreement, as is the case here. Accordingly, the Court will stay this proceeding pending the results of the arbitration.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 9). Under the parties' valid arbitration agreements, Plaintiffs are compelled to individually arbitrate their claims.

**IT IS FURTHER ORDERED** staying these proceedings pending the results of the arbitrations. The parties shall file a joint status report within one week of the arbitrator's decisions or by February 11, 2022, whichever is sooner.

Dated this 11th day of August, 2021.

Honorable John J. Tuchi
United States District Judge